Filed 3/8/21  State Dept. of State Hospitals v. J.W. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE DEPARTMENT OF STATE HOSPITALS, | F081171 |
| Plaintiff and Respondent, | (Super. Ct. No. 19CRAD684671) |
| v. | |
| J.W., | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Mark E. Cullers, Judge.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown, Kevin L. Quade and Monique Seguy, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant, J.W., an individual admitted to Coalinga State Hospital for mental health treatment under the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.),[1] appeals from the trial court's order granting a petition by respondent, State Department of State Hospitals (DSH), to renew for one year the involuntary treatment of appellant with antipsychotic medications.  The petition was made by DSH on the grounds that appellant is either incompetent, that is, incapable of making rational decisions about his own medical treatment, and/or that he is dangerous within the meaning of section 5300.  The trial court granted the petition on the ground of appellant's incompetence to make medical treatment decisions.  In the instant appeal, appellant claims the evidence was insufficient to support the trial court's findings and argues a variety of other errors also occurred (e.g., hearsay evidence, due process, and equal protection).  We conclude that the trial court's order was adequately supported by substantial evidence and the other grounds presented in appellant's appeal were forfeited by him because he did not raise them in the trial court.  Accordingly, the order of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

The Petition

On January 22, 2019, DSH filed a petition for the renewal of an order to compel involuntary mental health treatment of appellant with antipsychotic medication.[2]  The petition stated that appellant was admitted to DSH at Coalinga in 2016 for treatment under the SVPA and is currently being administered involuntary antipsychotic

---

[1]     Unless otherwise indicated, further statutory references are to the Welfare and Institutions Code.

[2]     Pursuant to section 5008, subdivision (l), antipsychotic medication means any medication customarily prescribed for treatment of symptoms of psychoses and other severe mental and emotional disorders.

2.

medication pursuant to a prior court order dated March 19, 2018.  The specific relief sought in the petition was an order authorizing DSH to continue to involuntarily administer appropriate antipsychotic medications to appellant, as deemed necessary by DSH's clinical staff, for an additional period of time not to exceed one year from the date of the order.  The petition was made on alternative grounds that appellant is either incompetent and incapable of making decisions about his medical treatment, and/or that he is dangerous to others within the meaning of section 5300.  The petition was verified by the staff psychiatrist for DSH at that time, Mina Beshara, M.D.

According to the petition, appellant is diagnosed with bipolar one mental disorder.  His symptoms are described in the petition as including tangential and circumstantial thought processes, hyperverbal speech, and paranoid and grandiose delusions.  Allegedly, "[h]e is paranoid of staff, claims staff are threatening him and trying to sexually violate him[,]" and further believes the staff are part of a Mexican gang and are going to hurt him.  His delusions allegedly also include that he owns a multimillion-dollar business selling flowers at concerts, is the owner of a strip club, and has a fifth degree black belt in Karate and engaged in cage fights in prison.  Moreover, according to the petition, appellant continues to demonstrate a lack of insight into his mental condition, insisting that he has no serious mental illness, does not have bipolar one disorder, and needs no antipsychotic medications.  Specifically, the petition asserted that appellant believes he only has PTSD and the sole reason he is doing better during his hospitalization is because of a lack of recent stressors, and not because of the medications.

On the issue of the existence of violent behavior, the petition stated as follows: "While [appellant] has not had an incident of dangerous behavior in the last year, but for the Court's current order, he would refuse prescribed medication.  This would result in his mental health decompensating to the point where he would be a risk of dangerous behavior as indicated by his history of aggressive behavior.  [Appellant] is a danger to others when he is not taking his antipsychotic medications as demonstrated by the

3.

following events:  [¶]  a.  On August 4, 2016, when [appellant] was informed that he would be placed on one to one supervision with male staff due to sexually inappropriate behavior, he threatened staff by stating 'I'll put him in a mother fuckin hospital.'  [¶] b.  On November 10, 2016, [appellant] stated 'if a male staff is going to be my one to one, I'm going to fuck you guys up,' and 'fuck you Mexicans, you can't touch me, I'm having chest pain.'  [¶]  c.  On November 13, 2015, [appellant] was placed in seclusion for verbalizing thoughts of harming staff.  While in seclusion, he was very agitated, threatened staff, banged on the door, was not redirectable, and required five-point restraints.  [¶]  d.  [Appellant] has a history of assaultive behavior while in prison.  In May 2014, prison documents indicate that [appellant] assaulted a deputy by striking him in the upper left thigh through the tray door with a clenched fist, which resulted in him getting pepper sprayed."  Because of this demonstrated history of violence when he was not taking the medication, the petition asserted that "[t]here are no less intrusive methods of other alternatives to render him non-dangerous other than to administer involuntary antipsychotic medications."

Hearing in the Trial Court on Petition

After multiple continuances, the hearing on the petition was held on March 9, 2020.  At the hearing, the parties stipulated to bifurcate the issues of (i) appellant's alleged incapacity to make rational decisions about his medical treatment and (ii) appellant's alleged dangerousness, and to proceed on the issue of "capacity" only. DSH called as its primary witness, Dr. Nageswararao Vallabhaneni,**3** who is an expert in forensic psychiatry and was appellant's treating psychiatrist at DSH from July 2019 to the date of the hearing.  Dr. Vallabhaneni testified that appellant was admitted to DSH

---

**3** In some of the court documents in the record before us, Dr. Vallabhaneni is referred to by his nickname of "Dr. Rao" for short.

4.

under Welfare and Institutions Code "[section] 6602"[4] as a "sexually violent predator probable cause," and has been diagnosed with "pedophilia specified" and "bipolar one disorder." Dr. Vallabhaneni testified that the bipolar one disorder included objective symptoms such as delusions that are both paranoid and grandiose. The paranoid delusions suffered by appellant included that staff were trying to harm him or sexually assault him. Additionally, Dr. Vallabhaneni testified that appellant has no insight into his mental illness and, without a court order, would refuse his medication. Further, based on appellant's medical records and history, Dr. Vallabhaneni's opinion was that appellant's mental condition would deteriorate if he did not continue to receive antipsychotic medications.

Appellant testified on his own behalf at the hearing. His testimony was to the effect that he believes his actual mental health issue is post-traumatic stress disorder (PTSD) and not a mental condition requiring antipsychotic medications such as a bipolar one. He asserted that he believes he has PTSD due to the trauma he suffered from one or more incidents of sexual assault occurring while he was in prison in 1993-1994, and that certain triggers will cause him to panic such as having to sleep in a dorm setting or being on watch by a male sitter outside of his room. He stated that during the past three years he was no longer subjected to being watched by "one-to-one" male sitters, and during that entire three-year period of time he had no further incidents of aggression, paranoia or

---

**4**      Under section 6602, where a petition is filed for commitment of an individual to a state hospital under the SVPA, a trial judge determines "whether there is *probable cause* to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a), italics added.) If probable cause is found, the judge shall order that the person remain in custody in a secure facility until a trial on the merits can be held to determine whether the individual is an SVP subject to commitment to DSH for treatment. (*Id*.; see also §§ 6600, 6604.) After probable cause has been determined but before the trial has been conducted, the individual may be placed at a state hospital for hospitalization and treatment pending trial. (*State Dept. of State Hospitals v. J.W.* (2018) 31 Cal.App.5th 334, 341, 347–348 [relying on § 6602.5].) It is not clear from the record on appeal in this case whether the trial has occurred.

5.

delusions. He testified it was possible that, when he was out of control in the past, the antipsychotic medications may have helped him to some degree. But the antipsychotic medications were also causing serious side effects, which he reported to staff and they lowered the dosage of one medication. He said he would continue to take his medication, but he wanted to have a more accurate diagnosis made, which he believed would show he only has PTSD and does not need antipsychotic medications. He asserted the DSH doctors such as Dr. Vallabhaneni were not fully considering his past medical history, in which he did not need involuntary medication. Further, appellant denied that he was experiencing any delusions, testifying that he was in fact sexually assaulted in prison, he did at one time own a multimillion-dollar flower business, and does have extensive martial arts training.

At the conclusion of the testimony, closing arguments were made by counsel. Afterwards, the trial court announced the following ruling from the bench: "This is a very close case, but I will grant the order for involuntary medication for another year." The trial court explained: "I will find by clear and convincing evidence that [appellant], although he is aware of his situation, I don't believe he understands the benefits and risks of his treatment, and he is not able to knowingly, intelligently and rationally evaluate and participate in his treatment decision at this time. It is a very close decision by this Court. [¶] I think [appellant] comport[ed] himself … pretty well here in this hearing, but the Court is without sufficient evidence to back up some of the statements that he has made. So therefore, it is ordered that [appellant] be involuntarily administered antipsychotic medication by [DSH] in the dosage, and for the frequency deemed necessary by [DSH] staff for a period of time not to exceed one year from the date of this order."

On March 9, 2020, the trial court filed a formal written order granting DSH's petition to compel involuntary treatment of appellant with antipsychotic medication. The order was granted on the ground that appellant "[l]acks capacity to refuse treatment." On March 17, 2020, appellant filed his notice of appeal from the trial court's order.

6.

# DISCUSSION

## I. Standard of Review

We review a trial court's order authorizing a state hospital to involuntarily administer antipsychotic medication under the substantial evidence test. (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1016; *People v. O'Dell* (2005) 126 Cal.App.4th 562, 570.) The order must be supported by evidence that the SVP[5] or mentally disordered offender (MDO) was *either* (a) incompetent or incapable of making decisions about his medical treatment, *or* (b) dangerous within the meaning of section 5300. (*In re Calhoun* (2004) 121 Cal.App.4th 1315, 1322.) A determination that an individual is incompetent to refuse medical treatment must be supported by clear and convincing evidence. (*State Dept. of State Hospitals v. J.W.*, *supra*, 31 Cal.App.5th at p. 346.) "To ensure the right to refuse medication is protected, a judicial determination of incapacity based on clear and convincing evidence is required before involuntary medication is permitted." (*Ibid.*)

"[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses,

---

[5] For purposes of such involuntary treatment, the same standard applies to individuals who are transferred to a state hospital (i.e., DSH) based on a determination of probable cause of SVP status under section 6602. (See *State Dept. of State Hospitals v. J.W.*, *supra*, 31 Cal.App.5th at pp. 338, 347–348.)

7.

resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.)

## II.  Overview of SVPA

The SVPA authorizes the involuntary civil commitment of a person who has completed a prison sentence but is found to be a sexually violent predator (SVP). (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 344.) Section 6600, subdivision (a)(1) defines an SVP as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." The SVPA's purposes are " 'to protect the public from dangerous felony offenders with mental disorders and provide mental health treatment for their disorders.' " (*People v. McKee* (2010) 47 Cal.4th 1172, 1203.)

The Welfare and Institutions Code outlines the procedure for determining whether a person is an SVP. (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 646.) Based on the outcome of an evaluation process by mental health experts appointed by DSH, a petition may be filed in the trial court for commitment of the person under the SVPA. (§ 6601, subd. (d); *Reilly*, at p. 647.) After the petition for commitment is filed, the trial court must hold a hearing to "determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) If the trial court finds that probable cause exists, the court orders a trial to be conducted to determine whether the person is an SVP under section 6600. (*Reilly*, at p. 648.) "Though civil in nature, this trial contains a number of procedural safeguards commonly associated with criminal trials, including the alleged SVP's right to a jury trial (§ 6603, subd. (a)), to assistance of counsel (*ibid.*), and to a unanimous jury finding that he or she is an SVP beyond a reasonable doubt before he or she may be committed (§ 6604)." (*Ibid.*)

After the determination of probable cause and prior to the completion of the trial, the alleged SVP shall " 'remain in custody in a secure facility.' (§ 6602, subd. (a).)" (*People v. DeCasas* (2020) 54 Cal.App.5th 785, 802.)[6] As we have clarified in a prior appeal involving the same parties, a trial court has discretion to order an alleged SVP to receive hospitalization and treatment at DSH, pending trial, after a finding of probable cause has been made. (*State Dept. of State Hospitals v. J.W.*, *supra*, 31 Cal.App.5th at pp. 341, 347–348.) That was apparently the procedural posture of appellant's initial transfer in 2016 to DSH at Coalinga for mental health treatment in the present case. Involuntary treatment of appellant with antipsychotic medications was thereafter ordered by the trial court in 2017, and that order was renewed in 2018. (*Id*. at pp. 338–339.) The present appeal challenges the subsequent order by the trial court, entered in 2020, to renew or continue for an additional year such involuntary treatment of appellant with antipsychotic medications.

## III. Substantial Evidence Supported the Order for Involuntary Medication

Appellant challenges the trial court's order on the ground that the evidence was insufficient to support the decision to continue involuntary medication. We preface our consideration of this question with a brief overview of the applicable legal principles for ordering involuntary medication.

A competent adult has a common law and constitutional right to refuse medical treatment, including the administration of antipsychotic drugs. (*In re Qawi* (2004) 32 Cal.4th 1, 14.) However, a patient committed to a state hospital for treatment under certain statutory schemes may be forcibly treated with antipsychotic medication if a court has determined that he or she is not competent to refuse such treatment. (*Id*. at pp. 9–10,

---

[6] Although the SVPA does not specify the time within which a trial must be held after the court makes a finding of probable cause, constitutional due process requires that such trial be held within a meaningful time. (*In re Butler* (2020) 55 Cal.App.5th 614, 664; *People v. DeCasas*, *supra*, 54 Cal.App.5th at p. 802.) It is unclear from the record on appeal in this case whether appellant has had a trial to determine whether he is an SVP.

9.

27 [applying rule to MDO's].)  As summarized by the Court of Appeal in *In re Calhoun*, *supra*, 121 Cal.App.4th 1315, an individual who is committed under the SVPA may be compelled to take antipsychotic medication in a nonemergency situation only if a court makes one of two findings:  "(1) that the [SVP] is incompetent or incapable of making decisions about his medical treatment; *or* (2) that the [SVP] is dangerous within the meaning of … section 5300.' "  (*Id*. at p. 1322, citing *In re Qawi*, at pp. 9–10; see also *State Dept. of State Hospitals v. J.W.*, *supra*, 31 Cal.App.5th at pp. 343–344.)

Here, the order in question was made on the ground of incompetency.  A judicial determination of competency to refuse medical treatment involves consideration of three primary factors:  (1) whether the patient is aware of his or her situation and acknowledges the existence of his or her condition; (2) whether he or she is able to understand the benefits and risks of, and alternatives to, treatment; and (3) whether he or she is able to understand and intelligently evaluate the information required to be given to patients whose informed consent is sought, and to participate in the treatment decision by rational thought processes.  (*Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322–1323.)  A trial court's finding of lack of competence to refuse medical treatment must be based on clear and convincing evidence.  (*State Dept. of State Hospitals v. J.W.*, *supra*, 31 Cal.App.5th at p. 343.)  As we have noted, when reviewing a challenge to the sufficiency of evidence where a clear and convincing evidence standard applied in the trial court, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true."  (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1011.)

Based on our review of the record, we conclude that a reasonable trier of fact could have found it highly probable that appellant lacked mental capacity to refuse antipsychotic medication.  Our conclusion largely relies on Dr. Vallabhaneni's testimony at the hearing.  As appellant's treating psychiatrist at DSH since July 2019,

10.

Dr. Vallabhaneni had extensive firsthand observation of appellant's mental health condition. Dr. Vallabhaneni also reviewed appellant's medical history and concurred with the diagnosis of the prior treating psychiatrist, Dr. Beshara, that appellant has bipolar one disorder, in addition to pedophilia. Appellant's symptoms indicating bipolar one disorder, according to Dr. Vallabhaneni, included delusions "both paranoid and grandiose," along with unusual thought processes that were described as "circumstantial and tangential," and speech that was "hyperverbal." As evidence of paranoid delusions, Dr. Vallabhaneni testified to the fact that appellant has been convinced that staff, including hospital staff, were trying to cause physical harm and to sexually abuse him. Thus, appellant was manifesting paranoid delusions about the staff at the hospital. When such assertions of abuse were independently investigated, they were not substantiated. It was also noted at the hearing that Dr. Beshara, the psychiatrist who originally executed the subject petition, referred in the petition to appellant's claims of owning a multimillion-dollar flower business and strip club, and of engaging in martial arts cage fights in prison, as further evidence of grandiose delusions that would tend to support the bipolar one diagnosis. Although Dr. Vallabhaneni did not have an opportunity to investigate whether appellant's descriptive accounts of exploits such as his alleged multimillion-dollar flower business were factually accurate, nevertheless, in light of appellant's extensive prison history, Dr. Vallabhaneni was "not really convinced" appellant was running a business on a consistent basis.

According to Dr. Vallabhaneni, the effective treatment of bipolar one disorder requires antipsychotic medication. Appellant has clearly shown significant improvement while on such medication. Appellant's medical history reflects that his symptoms deteriorate when he is not on the medication, and he relapses or decompensates. Dr. Vallabhaneni testified that appellant is not aware of his bipolar one condition and does not understand or appreciate that he is exhibiting symptoms consistent with bipolar one disorder. Moreover, not only does appellant have no insight into his mental illness,

11.

he has told Dr. Vallabhaneni that he does not believe he has a serious mental illness. Dr. Vallabhaneni's assessment is that appellant does not recognize that his condition has improved when on antipsychotics and does not understand the risks and benefits of taking or not taking antipsychotics. Although appellant typically directs all discussion of his condition to the subject of PTSD, in doing so he is unwilling to discuss treatment even for potential PTSD, much less for bipolar one disorder. Dr. Vallabhaneni's opinion was that appellant probably does not suffer from PTSD, but even if some form of PTSD symptoms existed, the bipolar one disorder would still have to be treated with medication.

As to his willingness to take medications, appellant told Dr. Vallabhaneni that, apart from the court order, he was only willing to take medication on an as needed or "PRN" basis. However, Dr. Vallabhaneni informed the trial court that, medically speaking, bipolar cannot appropriately be treated in that way. The antipsychotic medication must be taken regularly, with certain levels remaining in the bloodstream, to work effectively. Furthermore, Dr. Vallabhaneni stated there was a history of appellant refusing to take medication offered for his symptoms, which were refused by him in the past even while he was manifesting aggressive and uncontrollable behavior.

We recognize that appellant's testimony at the hearing offered a very different portrayal of his condition and of the causes of his past symptoms, but we are required to view the entire record in the light most favorable to the prevailing party and "give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011–1012.) Here, it is clear the trial court resolved the conflict in the evidence presented at the hearing by crediting the psychiatrist's testimony over that of appellant. The trial court expressly found "by clear and convincing evidence" that even though appellant is generally "aware of his situation" and able to "comport[] himself" well at the hearing, he does not

12.

"understand[] the benefits and risks of his treatment, and he is not able to knowingly, intelligently and rationally evaluate and participate in his treatment decision at this time." The trial court indicated it was not persuaded by the assertions made by appellant at the hearing because of insufficient evidence to corroborate some of the statements that he made.

In light of the entire record, we hold the evidence was sufficient for the trial court to have reasonably concluded it was highly probable that appellant was incompetent to make his own medical treatment decisions. Accordingly, appellant's substantial evidence challenge to the trial court's order falls short and is rejected.

## IV. Purported Evidentiary Errors Were Forfeited or Nonprejudicial

Appellant contends the trial court erroneously admitted hearsay testimony when appellant's current treating psychiatrist, Dr. Vallabhaneni, testified regarding appellant's prior treatment or medical history that was apparently derived from the statements of appellant's former treating psychiatrist, Dr. Beshara. Appellant argues the admission of such testimony violated the recent Supreme Court decision in *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*).

In *Sanchez*, *supra*, 63 Cal.4th 665, the California Supreme Court considered, among other issues, the propriety of an expert witness relating case-specific hearsay to the jury under the rules of evidence. *Sanchez* held that an expert witness may not "relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or covered by a hearsay exception." (*Id*. at p. 686.) Case-specific facts are "those relating to the particular events and participants alleged to have been involved in the case being tried." (*Id*. at p. 676.) The court's decision in *Sanchez* sought to restore the traditional rule that an expert generally may not supply case-specific facts about which he has no personal knowledge, unless independently proven or properly admitted under a hearsay exception. (*Id*. at pp. 676, 685.) At the same time, *Sanchez* recognized that "[a]ny expert may still *rely* on hearsay in forming an opinion,

13.

and may tell the jury *in general terms* that he did so." (*Id.* at p. 685; see Evid. Code, §§ 801, 802.) However, the court emphasized "[t]here is a distinction to be made between allowing an expert to describe the type or source of the matter relied upon as opposed to presenting, as fact, case-specific hearsay that does not otherwise fall under a statutory exception." (*Sanchez*, at p. 686.) "What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Ibid.*)

In asserting a *Sanchez* hearsay error, appellant points to certain testimony of Dr. Vallabhaneni together with a series of objections and explanations by counsel at the hearing. Dr. Vallabhaneni testified concerning the diagnosis that was made by the prior treating psychiatrist, Dr. Beshara, and he expressly concurred in that diagnosis of bipolar one disorder. A *relevance* objection was raised by appellant's counsel to matters relating to the earlier diagnosis that dated back to the time of the previous court hearing, to which DSH's counsel responded such evidence "demonstrates a continuum of care and continuum of diagnosis, which is within his necessity to review as part of his treatment." The trial court overruled the relevance objection. Dr. Vallabhaneni then testified that appellant had a history of refusing medication. When Dr. Vallabhaneni was asked if appellant has ever been "off antipsychotic medication while at Coalinga," appellant's counsel objected based on the "timeframe" of the question, to which DSH's counsel replied, "it goes to treatment of this patient." At the court's suggestion, the question was rephrased to ask whether appellant "decompensates" when he is not on his antipsychotic medication, and in the middle of Dr. Vallabhaneni's answer, appellant's counsel objected that Dr. Vallabhaneni was "going into specific facts." In responding to that objection, DSH's counsel appeared to treat it as merely a further objection based on the relevance of "treatment discussions." The objection was apparently overruled. Dr. Vallabhaneni proceeded to answer, testifying that since he has been treating appellant, there has been no indication appellant has refused to take his medications, but Dr. Vallabhaneni added

14.

that according to Dr. Beshara, appellant's symptoms deteriorate when not on medication. Appellant's counsel stated, "same objection," and the trial court overruled it.

DSH argues the purported evidentiary error was forfeited on appeal because appellant never made a specific hearsay objection based on *Sanchez* in the trial court. We agree. Although an objection that Dr. Vallabhaneni was getting into "specific facts" was made at one point, it appears from the entire exchange that the primary concern expressed by appellant's counsel was that the medical testimony be relevant and current. No hearsay objection was ever articulated in the trial court. It is well established that a reviewing court will generally not consider a challenge to the admissibility of evidence unless there was a specific and timely objection in the trial court on the same ground sought to be urged on appeal. (*People v. Gomez* (2018) 6 Cal.5th 243, 286.) An objection must fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling. (*People v. Zamudio* (2008) 43 Cal.4th 327, 354.) " ' "Specificity is required both to enable the court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence." ' " (*People v. Nelson* (2012) 209 Cal.App.4th 698, 711.) Accordingly, "[t]he failure to raise a specific objection to the admission of evidence results in forfeiture of appellate review." (*Ibid*.) That is precisely the situation here. We conclude that appellant's failure to raise the *Sanchez*-based hearsay objection with adequate clarity and specificity in the trial court resulted in a forfeiture of that evidentiary issue on appeal.

As a fallback position, appellant suggests that if the issue was forfeited based on failure to properly object, then we should nonetheless reverse the trial court's order based on ineffective assistance of counsel. We reject that contention. A party's burden of showing ineffective assistance of counsel has been characterized as " 'difficult to carry' " on appeal for various reasons, including that a reviewing court will not reverse on that

ground absent affirmative evidence that counsel had no rational tactical purpose for its failure to object. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Here, our review suggests a likely tactical reason: a hearsay objection may have led to DSH curing the problem by introducing the past medical records under a hearsay exception. In other words, the records may have contained information about appellant that counsel did not want the court to consider. Furthermore, as pointed out by DSH, hearsay exceptions under Evidence Code sections 1271 (business records hearsay exception) and 1280 (public employee records recording act, condition, or event as hearsay exception) would undoubtedly have applied under the circumstances presented, which would have cured the purported hearsay error even if a proper objection had been made. (See *People v. Nelson*, *supra*, 209 Cal.App.4th at p. 710 [" 'Hospital … records, if properly authenticated, fall within the umbrella of the business record exception' "].) For similar reasons, counsel's failure to object has not been shown to be prejudicial. (See *Mickel*, at p. 198.) Based on the foregoing analysis, we reject appellant's contention that its failure to raise a hearsay objection at the hearing constituted ineffective assistance of counsel.

Finally, as an additional evidentiary issue, appellant suggests the trial court improperly restricted Dr. Vallabhaneni from answering some of the questions relating to whether appellant may have been suffering from PTSD. We reject this argument because no prejudicial error has been affirmatively demonstrated. Contrary to appellant's characterization, Dr. Vallabhaneni gave considerable testimony in response to numerous questions posed by both parties' counsel about PTSD. The trial court did sustain objections in a few instances where questions by appellant's counsel were asked and answered, or where appellant's counsel apparently mischaracterized Dr. Vallabhaneni's earlier testimony or presupposed that a diagnosis of PTSD was required under the given circumstances. In our review of this matter, we acknowledge that Dr. Vallabhaneni's testimony on the issue of PTSD was at times, somewhat obscure. As best as we can glean from the entirety of Dr. Vallabhaneni's testimony at the hearing, it appears he was

not denying that PTSD could be based on sexual assault, but he simply did not think it could have resulted or occurred *in appellant's case* from a single event or from the particular circumstances described by appellant. Thus, he did not believe appellant had PTSD and he remained steadfast in his opinion that appellant's symptoms indicated bipolar one disorder.[7] In any event, Dr. Vallabhaneni later clarified at the hearing that even if appellant did have PTSD, the bipolar one condition would still need to be treated with medication.

Bringing our discussion on this evidentiary matter to a close, we conclude that appellant's assertion of error relating to the PTSD testimony to be perfunctory at best and not adequately supported by cogent legal discussion and case authority within appellant's brief. By itself, such a deficiency gives us good reason to disregard this line of argument. (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1399; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482; *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 ["argument raised in such perfunctory fashion is waived"].) Moreover, as alluded to above, appellant has not adequately demonstrated how this purported error was prejudicial, especially in light of the entirety of Dr. Vallabhaneni's testimony at the hearing on the issue of PTSD. (See *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557 [a judgment or order of trial court is presumed correct, and thus an appellant's burden is to affirmatively demonstrate not only the existence of error, but also that such error was prejudicial].) Appellant has not met his fundamental burden on this discrete evidentiary issue, and thus his appeal on such ground falls short.

---

**7** It was apparently in this context that the trial court told appellant's counsel that if he wanted an expert opinion confirming appellant was in fact experiencing PTSD, he would need to bring in another or different expert, since Dr. Vallabhaneni had specifically concluded otherwise under the circumstances.

17.

For all the reasons discussed hereinabove, we conclude that appellant's claim of hearsay error was forfeited due to his failure to properly object in the trial court, and that appellant has failed to demonstrate other reversible evidentiary error was committed by the trial court.

## V. Purported Due Process Error Was Forfeited

Appellant argues that a prisoner or an SVP may not be involuntarily medicated consistent with federal due process standards unless, in addition to a determination of incapacity to make medical decisions and/or dangerousness, it is *also* established that the involuntary medication is in the individual's own medical interests. (See *Washington v. Harper* (1990) 494 U.S. 210, 227.) We conclude the contention is forfeited on appeal because it was never raised in the trial court. (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590.) No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. (*Id*. at p. 590.) Here, appellant could have—but did not—raise this issue in the trial court by either objecting or requesting an express finding of fact on the issue of whether treatment with antipsychotic medications was in his medical interest. Therefore, the matter has clearly been forfeited by appellant's failure to raise it or object in the trial court.

Additionally, we presume in favor of the judgment every finding of fact necessary to support it, if warranted by the evidence. (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165.) Here, an implied finding that treatment with antipsychotic medication was in appellant's medical interest would be warranted from the substance of Dr. Vallabhaneni's testimony that (i) appellant is diagnosed with bipolar one disorder, (ii) the treatment of which disorder calls for antipsychotic medications, (iii) appellant's symptoms have shown significant improvement with the use of the medication, (iv) his symptoms deteriorate without the medication.

In conclusion, the due process issue has been forfeited by appellant's failure to object in the trial court; furthermore, even if the issue had not been forfeited, an implied finding that the treatment was in appellant's medical interest is warranted under the facts. Accordingly, no reversible or cognizable due process error has been shown.

## VI. Purported Equal Protection Error Forfeited

Appellant contends his right to equal protection of the laws was violated because of an alleged difference between the standard under the SVPA for determining whether involuntary medication may be administered and the standard applied to persons who are found incompetent to stand trial (IST) in a criminal proceeding. According to appellant, an IST patient may only be involuntarily medicated if harm to the IST patient's physical or mental health would result in the absence of being treated with antipsychotic medication (see Pen. Code, § 1370, subd. (a)(2)(B)(i)(I)), while no such showing is required under the SVPA. However, appellant failed to raise his equal protection claim in the trial court, and therefore we conclude the issue has been forfeited. (See *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14 [forfeiture of equal protection claim]; *People v. Saunders*, *supra*, 5 Cal.4th 580, 590 [constitutional issues may be deemed forfeited by the party's failure to assert such right or claim in the trial court].)

We note DSH argues that, in addition to forfeiture, the equal protection claim also fails as a matter of law because SVP's and IST patients are *not* similarly situated for purposes of determining whether involuntary medication is appropriate. (See *People v. McKee*, *supra*, 47 Cal.4th at p. 1202 [prerequisite to equal protection claim is that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner].) According to DSH, the two classifications have important contextual differences. For example, generally at the time a petition for involuntary medication is considered under the SVPA, an SVP has been convicted of a sexually violent offense (see § 6600, subd. (a)), "has been judicially determined to be suffering from a mental disorder that renders him dangerous to others" (*In re Calhoun*, *supra*, 121 Cal.App.4th at p. 1349),

19.

and DSH will have developed a program providing "treatment for his or her diagnosed mental disorder" (§ 6606, subd. (a)).  Whereas, IST patients may not have been convicted of a crime or previously adjudicated to be dangerous, and their mental status is generally being evaluated by the trial court "[p]rior to making the order directing that the defendant be committed to [DSH]."  (Pen. Code, § 1370, subd. (a)(2); cf. Welf. & Inst. Code § 6600, subd. (a) [" 'Sexually violent predator' means a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior"].)  We find it is unnecessary to reach the merits of the equal protection question because, as discussed hereinabove, appellant forfeited his argument on appeal by failing to raise it in the trial court.

Appellant argues that even if the equal protection and due process issues have been forfeited due to his failure to object, we should reverse on the ground that his counsel's assistance was ineffective.  We disagree because appellant has not met the difficult requirements of demonstrating ineffective assistance of counsel.  "In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance.  [Citation.]  To demonstrate deficient performance, defendant bears the burden of showing that counsel's performance ' " ' "fell below an objective standard of reasonableness … under prevailing professional norms." ' " ' [Citation.]  To demonstrate prejudice, defendant bears the burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different."  (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.)  Additionally, the record must demonstrate affirmatively that counsel's omissions were not based on a rational tactical decision, such as a reasonable assumption that such objections would be overruled or that any deficiency might easily be cured.  (See *People*

*v. Samayoa* (1997) 15 Cal.4th 795, 848; see also *People v. Lucas* (1995) 12 Cal.4th 415, 443 ["we presume counsel's decision not to raise the claim was a reasonable, tactical one unless the record affirmatively demonstrates otherwise"].)

Based on Dr. Vallabhaneni's testimony at the hearing on appellant's need for the antipsychotic medication and how it has significantly helped his mental health symptoms, it appears likely that appellant did not raise these issues for a tactical reason and/or because it appeared the objections would be overruled. It also appears likely on this record that if an objection had been made, further or supplemental information could have readily been supplied, if needed, regarding appellant's medical interests in receiving the medication and/or the medicine's prevention of harm to appellant's mental health. In any event, appellant has clearly failed to adequately demonstrate any prejudice resulted from his counsel's failure to object. We reject his ineffective assistance of counsel argument.

## DISPOSITION

The order of the trial court is affirmed.

HILL, P.J.

WE CONCUR:

DETJEN, J.

PEÑA, J.